# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
# CENTRAL DIVISION

| | |
|---|---|
| REGINALD WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL R. SIBBETT et al.,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:07-CV-261 TS<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Paul Warner |

Plaintiff, Reginald Williams, an inmate at the Utah State Prison (USP), filed this civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2010). Plaintiff was granted leave to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 U.S.C.A. 1915 (West 2010). Before the court is Defendants' Motion to Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6).

## ANALYSIS

### I. Rule 12(b)(6) Standard

A motion to dismiss under Rule 12(b)(6) requires the court to decide whether the factual allegations made in the complaint, if true, would entitle the plaintiff to some sort of legal remedy. To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007).  In other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id*.  Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party.  *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177.  However, legal conclusions, deductions, and opinions couched as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments.  *See, e.g., Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001).  When a civil rights complaint contains only "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions conclusory and does not afford them the presumption of truth.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55).

## II. Plaintiff's Claims

Plaintiff's Complaint is divided into seven separate counts and names fourteen defendants, including twelve individuals and two governmental entities.  Although the precise legal basis for each of Plaintiff's claims is not entirely clear, the seven counts can be summarized

as follows: (1) Free Exercise Clause violation based on the Utah Board of Pardons and Parole's ("BOP" or "Board") consideration of religion in making parole determinations; (2) Establishment Clause violation based on BOP's alleged favoritism toward members of The Church of Jesus Christ of Latter-day Saints ("LDS Church"); (3) Equal Protection Clause violation based on BOP's consideration of race and religion; (4) conspiracy to violate the First and Fourteenth Amendments in relation to the allegations in Count Three; (5) denial of the First Amendment right to petition government for redress of grievances based on failure to comply with GRAMA requests; (6) conspiracy to violate the First Amendment based on improper handling of GRAMA requests; and (7) Establishment Clause violation based on improper handling of GRAMA requests in order to protect the LDS Church.

The Complaint seeks "monetary and punitive damages" as well as injunctive relief in the form of a "[n]ew BOP hearing without use of race or religious information," an order "enjoin[ing] defendants from using race and religion as criteria for state action," and a prohibition on "use of state power to protect LDS Church interest[s]." (Compl. at 30-31.)

### III. Sufficiency of Plaintiff's Complaint

Plaintiff's claims fall into three general categories: First Amendment and Equal Protection claims based on BOP operations, conspiracy claims, and GRAMA related claims. As discussed below, each of these categories of claims suffers from fatal defects.

#### A. First Amendment and Equal Protection Claims

#### i. General Allegations Regarding BOP Practices

Plaintiff's Complaint makes the following general allegations against the Board of Pardons. (1) Files used by the BOP to determine eligibility for parole contain documents that

3

identify inmate's race and religion.  (2) Board members are also members of the LDS Church and believe in the "racist and bigoted" doctrines of the LDS Church.  (3) Board members have granted early release to LDS prisoners to serve LDS missions.  (4) Religious affiliation is considered by the BOP for early release from prison.  (5) Non-LDS, non-white prisoners receive less consideration before the BOP, even if convicted of the same crime.  (6) Board members' first loyalty is to the LDS Church over their duties to the State of Utah.  (7) BOP does not apply the same guideline matrix to LDS prisoners as to non-LDS prisoners.  (Pl.'s Mem. Opp'n Mot. Dismiss at 4-5.)

Plaintiff's general allegations against the BOP are nearly identical to those presented in a previous case in this district, *Granguillhome v. Utah Board of Pardons and Parole*, 2:04-CV-260-TC, 2006 WL 3672901 (D. Utah Dec. 8, 2006).  That consolidated case involved allegations by several prisoner plaintiffs that the BOP routinely discriminates against non-LDS inmates.  The plaintiffs alleged that the BOP gave preferential treatment to inmates who were members of the LDS Church, in violation of the First Amendment and Equal Protection Clause.  In support of their claims the plaintiffs alleged that, statistically, LDS inmates received earlier original parole hearings and ultimately served less time on their sentences than non-LDS inmates before being paroled.  The plaintiffs in *Granguillhome* relied upon much of the very same evidence cited by Plaintiff, including the same statistical information and media reports of the Shonn Ricks case, in which a BOP member allegedly questioned Inmate Ricks about his religious beliefs and desire to serve an LDS mission if paroled.

In screening the *Granguillhome* complaint under 42 U.S.C. § 1915A(b) the court found that the BOP members in their individual and official capacities were absolutely immune from

suit and that the BOP itself was immune from damages claims under the Eleventh Amendment. (Case no. 2:04-CV-260-TC, doc. no. 46.) However, the plaintiffs were allowed to proceed with their claim for prospective injunctive relief against the BOP, subject to the limitations of the *Ex parte Young* doctrine. *See Ex parte Young*, 209 U.S. 123, 158-159, 28 S. Ct. 441, 454 (1908); see also *ANR Pipeline Co. v. Lafaver*, 150 F.3d 1178, 1188 (10th Cir. 1998) (explaining *Ex parte Young* as holding that in a suit against a state official "when a party seeks only prospective equitable relief--as opposed to any form of money damages or other legal relief--then the Eleventh Amendment generally does not stand as a bar to the exercise of the judicial power of the United States.") On summary judgment the court found that the plaintiffs had failed to produce sufficient evidence to support their First Amendment and Equal Protection Clause claims. Specifically, the court found that the minimal evidence mustered by the plaintiffs, including their much touted statistical data, did not support a finding that the BOP unconstitutionally considered religion in making parole decisions or gave preferential treatment to LDS inmates. *Granguillhome v. Utah Board of Pardons and Parole*, 2:04-CV-260-TC, 2006 WL 3672901, at *6-10 (D. Utah, Dec. 8, 2006).

Based on the striking similarity between Plaintiff's general allegations and those raised in *Granguillhome,* the court does not have "reason to believe that [Plaintiff] has a reasonable likelihood of mustering factual support for [these] claims." *Ridge at Red Hawk, L.L. C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Plaintiff has not presented any additional factual allegations showing that he has a greater likelihood of succeeding than the plaintiffs in *Granguillhome*. In fact, Plaintiff's allegations are simply a rehash of the same conclusory allegations presented in *Granguillhome* and even rely on the same "statistical reports" and media

5

mischaracterizations of the Shonn Ricks case. Despite extensive discovery, the *Granguillhome* plaintiffs proved unable to muster any significant evidentiary support for their claim that the BOP impermissibly considers religion. On the other hand, the BOP presented extensive evidence showing that it rarely has information about an inmate's religious affiliation, unless the issue is raised by the inmate himself or has a direct bearing on the inmate's criminal history or prospects for reoffending. Plaintiff's general allegations here do nothing to undermine that showing.

Because Plaintiff has not alleged sufficient facts to raise his general allegations against the BOP beyond the speculative level the court concludes that those allegations fail to state a claim on which relief can be granted.

### ii. Specific Allegations Regarding Plaintiff's Parole Hearing

Plaintiff's Complaint alleges that during his parole hearing, Defendant Green, the hearing officer, asked: "You changed your name to Khalifa Ulajihad and you practice the Islamic faith, is that correct?" Plaintiff states that he "felt intimidated" by this question and "was compelled against his will to admit he practiced the Islamic religion." (Compl. at 10.) Plaintiff further alleges that he was denied parole "based on the summary report written by Defendant Green and documents, both of which contain information concerning [Plaintiff's] religion and race." (Compl. at 10.) These allegations are the only factual support for Plaintiff's personal Establishment Clause and Equal Protection claims.

Plaintiff's allegations regarding his own parole proceedings do not support the conclusion that the Board impermissibly considered his race or religion when denying him parole. Instead, Plaintiff's allegations are consistent with the finding in *Granguillhome* that the Board is not routinely aware of inmate's religious affiliations or practices, although such issues occasionally

6

arise incidentally during its proceedings. Plaintiff's allegations show that his religious affiliation came up during his parole hearing only because of its relevance to Plaintiff's name change. Given that changing one's name or using an alias is a well-known means of obscuring ones identity and criminal background, the reason for Plaintiff's name change was a valid concern for the Board. Plaintiff's allegations support the conclusion that the hearing officer was merely trying to ascertain whether Plaintiff's name change was motivated by his religious beliefs, rather than an attempt to obscure his background. This incident does not show any intent to discriminate on the basis of religion, nor does it show that the Board impermissibly considered Plaintiff's religious affiliation in denying him parole. Plaintiff's assertion that he was denied parole based on his race or religion is not supported by his factual averments. Such conclusory assertions are not entitled to the presumption of truth.

Thus, the court concludes that Plaintiff's specific allegations regarding his parole proceedings are not sufficient to state a claim on which relief can be granted.

### B. Conspiracy Claims

Plaintiff's conspiracy claims assert that BOP members conspired with the LDS Church and the Utah Governor's Office to deny him parole and to withhold documents evidencing their conspiracy. Plaintiff further alleges that "during the July 6, 2004, executive session the defendant BOP members implicitly and explicitly agreed to achieve the denial of the plaintiff's release from prison based on the plaintiff's practice of the Islamic faith." (Compl. at 19.) Regarding his records requests, Plaintiff alleges that the Governor's Office withheld documents "because release of the documents would embarrass the LDS Church and the governor," and that Defendants Ford and Beales conspired to deny his GRAMA request because he was "a Negro,

7

Muslim Prisoner who was trying to embarrass the LDS Church . . . ." (Compl. at 20, 27-28.)

Once again, Plaintiff's conspiracy claims are entirely speculative and are not supported by specific factual allegations. For instance, Plaintiff does not state how he knows that the Board "implicitly" or "explicitly" agreed during its executive session to deny him parole based on his religion. Nor does Plaintiff offer any hard facts to support his theory that Board members are religiously biased, or that they routinely conspire with one another or with other state officials to promote or protect the LDS Church. Plaintiff's attempt to lend some legitimacy to his claims by impugning LDS beliefs or weaving tantalizing theories of a vast religious conspiracy only serve to highlight the obvious dearth of factual support for his claims.

The court concludes that Plaintiff has not plead sufficient facts to provide plausible grounds that discovery will reveal evidence to support his conspiracy claims. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) . Thus, Plaintiff's conspiracy claims are dismissed for failure to state a claim on which relief can be granted.

### C. GRAMA Claims

Plaintiff's GRAMA related claims assert that Defendants violated his First Amendment rights to freedom of speech and to petition the government for a redress of grievances by denying or otherwise interfering with his records requests. Plaintiff alleges that he sent a GRAMA request to the Utah Governor's Office which was denied without proper research. Plaintiff states that after he attempted to appeal the denial, Defendant Beales approached him on several occasions, at the behest of other prison and state officials, and "attempted to coerce [him] into dropping . . . the GRAMA request." (Compl. at 21.) Plaintiff alleges "upon information and belief" that Beales told Defendant Patterson that "Plaintiff was a Negro, [M]uslim prisoner who

8

was attempting to use GRAMA to embarrass the LDS Church, the Governor, the BOP and the UDC." (Compl. at 24.) Plaintiff further alleges that Beales conspired with others to deny Plaintiff a hearing on his GRAMA appeal and to ensure that his GRAMA request "went nowhere." (Compl. at 28.)

Despite Plaintiff's best efforts to clothe his GRAMA claims in First Amendment garb, the clear essence of his allegations is that Defendants failed to comply with Utah's GRAMA statute. As Defendants correctly point out, however, allegations that a defendant violated state law are insufficient to state a constitutional claim under 42 U.S.C. § 1983. *See Hilliard v. City & County of Denver*, 930 F.2d 1516, 1519 (10th Cir. 1991); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) (Section 1983 requires plaintiff to prove defendant deprived him of right secured by the Constitution or federal law). Plaintiff does not offer any legal support for his contention that denial or interference with GRAMA requests may amount to a denial of freedom of speech or the right to petition the government for a redress of grievances. Moreover, Plaintiff's well-plead factual allegations regarding the handling of his GRAMA requests do not support the conclusion that Defendants violated his First Amendment rights. Instead, the bulk of Plaintiff allegations are merely "legal conclusions, deductions, and opinions couched as facts" which the court must disregard. *Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001).

Thus, the court concludes that Plaintiff's allegations regarding his GRAMA requests are insufficient to state a claim on which relief can be granted.

**ORDER**

Based on the foregoing, **IT IS HEREBY ORDERED** that:

(1) Defendants' Motion to Dismiss (Docket no. 38) is **GRANTED**; and,

(2) this case is **CLOSED**.

DATED this 25th day of March, 2011.

BY THE COURT:

_____
TED STEWART, Chief Judge
United States District Court